1 ELIZABETH A. STRANGE
First Assistant United States Attorney
2 District of Arizona
KEVIN C. HAKALA
3 BEVERLY K. ANDERSON
Arizona State Bar No. 010547
4 Assistant U.S. Attorneys
United States Courthouse
5 405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
6 Telephone: 520-620-7300
Email: kevin.hakala@usdoj.gov
7 Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>Ahmad Suhad Ahmad,<br><br>Defendant. | CR-18-002417-TUC-RCC (LCK)<br><br>GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR REVIEW OF THE ORDER OF DETENTION |

The United States of America, by and through its undersigned attorneys, hereby submits its Response in Opposition to the Defendant's Motion for Review of the Magistrate Judge's Order of Detention. (Doc. No. 32.) On November 7, 2018, Magistrate Judge Eric J. Markovich correctly determined that the Defendant is both a flight risk and a danger to the community. As such, Judge Markovich ordered the Defendant detained. (Doc. No. 19.) The record clearly establishes that the magistrate court's decision to detain the Defendant was supported by the proffered information and the relevant law. A *de novo* review of that information will confirm that Ahmad Ahmad has failed to rebut the presumption of detention, and that he is both a flight risk and a danger to the community. The Court should deny the Defendant's motion and uphold the prior order of detention.

///

///

# I. Background

## A. The Offense Conduct

On November 20, 2018, a federal Grand Jury returned an Indictment charging Ahmad Suhad Ahmad with four counts involving the following: conspiracy to possess with intent to distribute heroin (Count 1), possession with intent to distribute heroin (Count 2), and distribution of information relating to explosives, devices, and weapons of mass destruction (Counts 3 and 4). He faces a mandatory minimum of 5 years in prison for count one and could potentially face a maximum sentence of 100 years in prison if convicted of all four counts in the indictment. *See* 21 U.S.C. §§ 841(b)(1)(B)(i) & (b)(1)(C); and 18 U.S.C. § 842(p)(2)(A).

The charges in this case are the result of an FBI investigation that involved multiple confidential sources and undercover agents. In December of 2016, the Defendant told a confidential source (CS3) he knew how to detonate a bomb by using a cellular phone with a removable battery. He explained to the source that he learned how to do this during the war in Iraq and that such bombs are easy for him to make. In April of 2017, the Defendant agreed to show CS3 how to make a car bomb for a target in Mexico. The source informed the Defendant that the purported target was a ranking member of a drug trafficking organization.

On or about April 11, 2017, the Defendant showed CS3 an image on his cellphone that contained instructions on how to construct an explosive device. The Defendant electronically sent CS3 multiple communications with instructions on how to build explosive devices. The instructional information the Defendant provided to CS3 was analyzed at the FBI laboratory. The examiners concluded that the information the Defendant provided was capable of producing devices that, if properly assembled, could cause property damage, personal injury, and death.

On April 19, 2017, the Defendant met with CS3 and an undercover agent to finalize plans to make the bomb. The Defendant agreed to travel to Las Vegas, Nevada, to build the device. The Defendant believed the bombs would be detonated in the United States

when the intended target from Mexico was in the United States to attend a sporting event. On April 26, 2017, the Defendant traveled from Tucson, Arizona, to Las Vegas, Nevada, with CS3, another confidential source (CS4), and two undercover agents. The Defendant brought along items to assist in constructing the bomb, including a circuit tester, electrical tape, and tubes of Permanent Epoxy. The undercover agents brought the other items required to build the bomb, which were obtained from information provided by the Defendant. Over the course of several hours, the Defendant built the device and described the process to one of the undercover agents. He showed the agent how to connect the blasting caps and where to connect the C-4 explosive. The Defendant then guided the agent on how to make a second device. Once both devices were constructed, the Defendant explained how they operated.

After the incident in Las Vegas, Nevada, the Defendant engaged in numerous conversations with CS3 and undercover agents that involved the Defendant constructing an explosive device using a laptop computer. On or about June 7, 2017, the Defendant met with CS3, CS4, and undercover agents at a hotel in Tucson, Arizona. The purpose of the meeting was for the Defendant to demonstrate how to build a bomb using a laptop. The Defendant believed the laptop bomb would be used to kill a member of the criminal organization to which the undercover agents supposedly belonged. During the meeting, the Defendant took apart his own laptop computer and explained to the agents in great detail how to construct an explosive device using the computer. After the meeting, the Defendant agreed to travel to Miami, Florida, to build the actual bomb that the Defendant believed would be used on the intended target within the United States.

With respect to the drug charges, the government will present evidence that the Defendant, through his own source of supply, sold approximately 45.3 grams of heroin to CS4 and conspired to sell more than 100 grams of heroin between on or about January 1, 2017, and on or about March 7, 2017.

///

**B. The Detention Hearing**

On November 2, 2018, the Honorable Eric J. Markovich conducted a detention hearing. (Doc. No. 15). At the hearing, the Defendant argued, among other things, that he was not a flight risk and that he was not a danger to the community. Pretrial services prepared a report, which recommended that the Defendant be detained pending trial as both a flight risk and a danger to the community. The government agreed with pretrial services recommendation and argued for detention. Pretrial services identified the following risk factors that formed the basis of their recommendations: (1) the Defendant's foreign familial ties; (2) his self-reported false address on file with the Department of Corrections; (3) his history of substance abuse; (4) his criminal history, which includes a prior felony probation violation and his current parole status; and (5) the nature of the current charges. (Doc. No. 13 at 5.) The magistrate judge concluded that—based on the nature and circumstances of the offenses, the weight of the evidence, and the defendant's personal history and characteristics—the government established by a preponderance of the evidence that the Defendant is a risk of flight, and no conditions of release can be set to ensure his appearance at trial. The magistrate judge also concluded that the government established by clear and convincing evidence that the Defendant presents a danger to the community, and no conditions of release can be set to ensure the safety of the community.

**C. Defendant's Motion to Reconsider Detention**

On December 10, 2018, the Defendant filed a motion requesting this Court review the magistrate judge's order of detention. (Doc. No. 32.) In his motion, the Defendant repeats much of the same information that he presented at the detention hearing. In particular, the Defendant maintains that he underwent a "religious awakening" while incarcerated and that he has been sober for over a year and a half. (Doc. No. 32 at 2.) Without making any reference to the fact that there is a presumption of detention in this case, the Defendant maintains, with little support for his argument, that he is neither a flight risk nor a danger to the community. For the reasons set forth below, this Court should uphold the magistrate judge's order of detention.

**II. Argument**

The previous analysis conducted by Judge Markovich should yield the same result: the Defendant presents a danger to the community, and no conditions of release can be set to ensure the safety of the community. Additionally, the Defendant is a risk of flight, and no conditions of release can be set to ensure his appearance at trial.

A judicial officer shall order the detention of a person before trial if the officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and protect the safety of any other person and the community. *See* 18 U.S.C. § 3142(e). There is a presumption that no condition or combination of conditions will reasonably assure the appearance of a defendant if he is charged with a drug offense for which a sentence of 10 years or more is authorized. *See* 3142(e)(3)(a).

The factors to be considered under Section 3142(g) include the following:

(1) the nature and circumstances of the offenses charged, including whether the offenses involve a controlled substance;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including

    (A) family ties, employment, financial resources, length of residence in the community, community ties, past conduct; and

    (B) whether at the time of the current offenses or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal or completion of sentence for an offense under Federal, State or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

The government must prove the defendant is a danger to the community by clear and convincing evidence. 18 U.S.C. § 3142(f). The government must prove risk of flight by a preponderance of the evidence. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).

A. **The Nature and Circumstances of the Offense Favor Detention**

As previously mentioned, there is a presumption in favor of detention based on the nature of the drug offenses. Moreover, the drug charges subject the Defendant to a five-year minimum term of imprisonment if convicted. Because the Defendant has multiple prior drug convictions, his advisory sentencing range will be well in excess of five years. Regarding the bomb charges, if the Defendant is convicted of these offenses, his advisory range will also be substantial. The possibility of a lengthy prison sentence elevates the Defendant's risk of flight.

With respect to dangerousness, the nature and circumstances of the bomb charges establish that the Defendant is a danger to the community. Specifically, the Defendant (1) obtained detailed instructions on how to make explosive devices and disseminated that information to others; (2) met with individuals on multiple occasions and provided detailed instructions on how to construct explosive devices; (3) brought some of the materials needed to construct the bombs, including his own laptop when demonstrating how to build a laptop bomb; and (4) assembled one of the devices. All of these circumstances weigh in favor of dangerousness.

**B. The Weight of the Evidence Favors Detention**

The weight of the evidence is the least important factor. *See United States v. Motamedi*, 767 F.2d 1403 (9th Cir. 1985). The government's physical evidence in this case includes, among other things, numerous video and audio recordings, surveillance records, and laboratory reports. The case against the Defendant is very strong. Therefore, the overall weight of the evidence is also a factor against him. Moreover, the weight of the evidence, coupled with the Defendant's prison exposure, increases his risk of flight.

**C. The Defendant's History and Characteristics Favor Detention**

As detailed by Pretrial Services in their report, the Defendant was born in Baghdad, Iraq, and has a number of family members that still reside there, including a sibling. He moved to the United States in 2008 and became a United States citizen in 2013. He maintains regular contact with his family in Iraq. The Defendant reports no assets.

1   The Defendant has a history of substance abuse, including methamphetamine, cocaine, and marijuana use. The Defendant reports using methamphetamine during the timeframe of the charged misconduct. (Def. Mot. at 2.) His current period of sobriety coincides with his recent incarceration.

The Defendant's criminal history includes the following arrests and convictions. In 2012, he was arrested for disorderly conduct; however, this charge was eventually dismissed. On November 26, 2016, he was arrested and charged with possession of a dangerous drug and possession of drug paraphernalia. He was convicted of those offenses on April 12, 2017, and sentenced to 18 months of probation. On June 27, 2017, he was arrested and charged with the following offenses: (1) transportation of a narcotic drug for sale; (2) possession of a dangerous drug; (3) possession of drug paraphernalia; and (4) driving with a suspended/revoked/cancelled license. Based on those new charges, a petition to revoke his probation was filed on June 29, 2017. On February 28, 2018, he was sentenced to two years in prison on the felony offense of transportation of a narcotic drug for sale, and one year in prison for the probation violation. The offenses that led to the probationary sentence were designated as felony offenses, and the Defendant is currently on parole.

While it is true that he has been living in the United States with his family for the past ten years, he has obtained multiple convictions during this time period. His recent religious conversion and sobriety, although important steps in the right direction, appear to stem from his incarceration and do not mitigate his otherwise negative history and characteristics. Additionally, his behavior on probation shows that he is unable to comply with court orders. His personal history and characteristics weigh in favor of detention.

### D. The Defendant Poses a Danger to the Community

As discussed above, the nature and circumstances of the bomb charges are disturbing. The Defendant disseminated detailed instructions on how to build explosive devices and demonstrated to undercover agents on multiple occasions how to construct the devices. The Defendant went so far as to construct a device and provide instructions on

how to construct devices that he believed would be used to kill individuals in public places. In doing so, he displayed his willingness to kill and harm innocent people. As such, the Defendant presents a serious danger to the community.

**III. Conclusion**

The Defendant is a dangerous individual with foreign ties, he is facing a substantial term of incarceration, and he is likely to flee the jurisdiction of this Court. He has failed to rebut the presumption of detention, and the proffered information establishes that he is both a flight risk and danger to the community. The requested relief should be denied, and he should be detained pending trial.

Respectfully submitted this 18th day of December, 2018.

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

*s/Kevin C. Hakala*

KEVIN C. HAKALA
Assistant U.S. Attorney

Copy of the foregoing served electronically or by
other means this 18th day of December, 2018, to:

All ECF participants