JON M. SANDS
Federal Public Defender
**WALTER I. GONÇALVES, JR.**
Assistant Federal Public Defender
State Bar No. 023659
407 W. Congress St., Suite 501
Tucson, AZ 85701
Telephone: (520) 879-7500
*walter_goncalves@fd.org*
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR18-02417-TUC-RCC (LCK) |
| Plaintiff, | **MOTION TO RECONSIDER ORDER OF DENTENTION HEARING** |
| vs. | **(Hearing Requested)** |
| Ahmad Suhad Ahmad, | |
| Defendant. | |

This motion may cause excludable delay under 18 U.S.C. § 3161(h)(1)(D).

**1. Introduction**

Defendant, through counsel, pursuant to 18 U.S.C. § 3142(f), moves to reopen the Detention Hearing.[1] New information is the advent of COVID-19, which is wreaking havoc across the United States and will infiltrate inmates at CoreCivic of America (CCA) and Federal Correctional Facility, in Tucson. Mr. Ahmad has asthma and had cancer two times within the last 10 years.[2] Secondly, defense counsel uncovered facts that materially change Mr. Ahmad's culpability.

---

[1] Per 18 U.S.C.A. § 3142, "The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."

[2] According to Pre-Trial Services, "The defendant reported he had a third of his kidney removed in 2009 as deemed cancerous. Furthermore, he reported having a tumor removed from his hip bone in 2014 as also cancerous." (See Doc 13). Although asthma is not listed in the PTS report it is a condition Mr. Ahmad experiences.

1

## 2. Background

The factors the court must consider in deciding release are outlined in 18 U.S.C. § 3142(g).  Defense counsel previously briefed these issues for the court in a motion for Mr. Ahmad's release (Doc. 32).[3]  The magistrate judge and this court declined his release.  Mr. Ahmad respectfully asks the court to reconsider those factors, along with the new information.

The Bail Reform Act provides for the "temporary release" of a person in pretrial custody "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). The health risk to Mr. Ahmad, because of his asthmatic condition and prior cancer treatment, given the conditions at CCA, necessitates his temporary release on bail until this pandemic has ended. Mr. Ahmad may reside with his mother and/or sister.  Their information was provided to Pre-Trial Services before defense counsel filed this motion.

## 3. COVID-19 in federal facilities

As of April 22, 2020, there are 566 federal inmates and 342 BOP staff who have confirmed positive test results for COVID-19 nationwide.[4] Currently, 248 inmates and 52 staff have recovered.[5] There have been 24 federal inmate deaths and 0 BOP staff member deaths attributed to COVID-19 disease.[6]  The numbers will continue to increase and will soon affect CCA in Florence, Arizona.  Many inmates have died and will continue to die, as federal prisons are unequipped to test and treat new cases.[7]

The CDC has issued guidance that individuals at higher risk of contracting COVID-19— adults over 60 years old and people with chronic medical conditions such as lung

---

[3] Mr. Ahmad respectfully asks the court to review 18 U.S.C. § 3142(g)'s factors analyzed in that motion (see Docs 32 and its attachments).  This pleading describes new information not previously known.
[4] *See* BOP website, https://www.bop.gov/coronavirus/ (last visited on April 23, 2020).
[5] *Id*.
[6] *Id*.
[7] *See* Luke Barr, *Federal prisons facing shortages of resources amid coronavirus outbreak*, ABC News (April 2, 2020), available at https://abcnews.go.com/Health/federal-prisons-facing-shortages-resources-amid-coronavirus-outbreak/story?id=69920966 (last visited on April 23, 2020).

2

disease, heart disease, and diabetes—take immediate preventative actions, including avoiding crowded areas and staying home as much as possible.[8]

### 4. Conditions of Confinement and Spread of Coronavirus

Conditions of pretrial confinement create the ideal environment for the transmission of contagious disease.[9] Inmates cycle in and out of BOP pretrial facilities from all over the world and the country, and people who work in the facilities leave and return daily, without screening. Incarcerated people have poorer health than the general population, and even at the best of times, medical care is limited in federal pretrial detention centers.[10] Many people who the government and courts incarcerate also have chronic conditions, like diabetes or HIV, which makes them vulnerable to severe forms of COVID-19. According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[11] Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases.[12] In China, officials have confirmed the coronavirus spreading at a rapid pace in Chinese prisons, counting 500 cases.[13] Secretary of State Mike Pompeo has called for Iran to release Americans detained there because of the "deeply troubling" "[r]eports that COVID-19 has spread to Iranian prisons," noting that "[t]heir detention amid increasingly deteriorating conditions defies basic human

---

[8] People at Risk for Serious Illness from COVID-19, CDC (March 12, 2020) at https://bit.ly/2vgUt1P

[9] Joseph A. Bick (2007). *Infection Control in Jails and Prisons*. Clinical Infectious Diseases 45(8):1047-1055, at https://doi.org/10.1086/521910.

[10] Laura M. Maruschak et al. (2015). *Medical Problems of State and Federal Prisoners and Jail Inmates*, 2011-12. NCJ 248491. Washington, D.C.: U.S. Department of Justice, Bureau of Justice Statistics, at https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf.

[11] "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020), at https://bit.ly/2W9V6oS.

[12] *Prisons and Jails are Vulnerable to COVID-19 Outbreaks*, The Verge (Mar. 7, 2020) at https://bit.ly/2TNcNZY.

[13] Rhea Mahbubani, Chinese Jails Have Become Hotbeds of Coronavirus As More Than 500 Cases Have Erupted, Prompting the Ouster of Several Officials, Business Insider (Feb. 21, 2020) at https://bit.ly/2vSzSRT.

decency."[14]  Courts across Iran have granted 54,000 inmates furlough as part of the measures to contain coronavirus across the country.[15]  Brooklyn District Attorney Eric Gonzalez, joined by public health experts, has asked Governor Cuomo to grant emergency clemencies to elderly and sick prisoners.[16]

*Specific Conditions at CCA*

A 2016 article about CCA in Mother Jones Magazine reported that 14.9% of civil law suits filed against CCA related to medical care.[17]  16.1% of suits filed related to civil rights and prison conditions.  Defense counsel has visited inmates in CCA and observed that they reside with a cellmate in extremely small rooms where they are locked down for hours during the day.  These conditions are perfect for the spread of the virus.

**5. The Bail Reform Act requires Mr. Ahmad's release**

A "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). The circumstances that existed when Mr. Ahmad was ordered detained have now changed. A pandemic poses a direct risk to Mr. Ahmad that is far greater if he continues to be detained during this public health crisis. Mr. Ahmad is vulnerable because he is asthmatic and previously treated for cancer within the last 10 years (see Pre-Trial Services Report confirming these conditions, Docs. 13, 14 and 38).

//

//

---

[14] Jennifer Hansler and Kylie Atwood, *Pompeo calls for humanitarian release of wrongfully detained Americans in Iran amid coronavirus outbreak*, CNN (Mar. 10, 2020) at https://cnn.it/2W4OpV7.
[15] Claudia Lauer and Colleen Long, *US Prisons, Jails On Alert for Spread of Coronavirus*, The Associated Press (Mar. 7, 2020) at https://apnews.com/af98b0a38aaabedbcb059092db356697.
[16] Sarah Lustbader, *Coronavirus: Sentenced to COVID-19*, The Daily Appeal (Mar. 12, 2020) at https://theappeal.org/sentenced-to-covid-19/.
[17] Shane Bauer, *The Corrections Corporation of America, by the Numbers*, Mother Jones (July/August 2016), http://www.motherjones.com/politics/2016/06/cca-corrections-corperation-america-private-prisons-company-profile.

4

**6. A review of the facts of the case**

At the time of the initial bail determination, defense counsel did not know that the explosive devices subject of counts 3 and 4 are completely inoperable. This supports the fact that Mr. Ahmad lied to people he thought could have been members of a drug trafficking organization in order to make extra money. He lied about his past, abilities, and knowledge. The alleged recipe he showed to undercover agents or officers are available to anyone with a phone. This act, if proven, was done to continue his attempt to lie to make several thousand dollars. Mr. Ahmad, at the time of the acts, suffered from substance abuse addictions. The fact the auto-mechanic shop next to his, where most transactions took place, was operated by a bona fide drug dealer, does not make Mr. Ahmad anything other than an addicted opportunist not a serious criminal, much less serious drug trafficker. Although the BRA calls for the weight of the evidence as the least important factor in deciding bail, these are new facts unknown to defense counsel at the time. *United States v. Gebro*, 948 F.2d (9th Cir. 1991) (The weight of the evidence is the least important factor).

**7. Conclusion**

Due to the impact of COVID-19 and Mr. Ahmad's medical conditions, along with new factual developments in the case, release, at least temporarily, serves the purpose of assuring Mr. Ahmad's health and appearance for trial.

RESPECTFULLY SUBMITTED this 5th day of May, 2020.

JON M. SANDS
Federal Public Defender

*/s/ Walter I. Gonçalves, Jr.*
WALTER I. GONÇALVES, JR.
Assistant Federal Public Defender

Copy delivered electronically this date to:

Erica Seger
Assistant United States Attorney

5