JON M. SANDS
Federal Public Defender
**WALTER I. GONÇALVES, JR.**
Assistant Federal Public Defender
State Bar No. 023659
407 W. Congress St., Suite 501
Tucson, AZ 85701
Telephone: (520) 879-7500
*walter_goncalves@fd.org*
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR18-02417-TUC-RCC (LCK) |
|---|---|
| Plaintiff, | **MOTION TO SUPPRESS EVIDENCE IN VIOLATION OF THE FOURTH AMENDMENT** |
| vs. | |
| Ahmad Suhad Ahmad, | **(Evidentiary Hearing Requested)** |
| Defendant. | |

This motion may cause excludable delay under 18 U.S.C. § 3161(h)(1)(D).

**I.    Facts of the case**

On June 27, 2020, Border Patrol Agent Jose Madrigal conducted a traffic stop of a white Nissan Xterra traveling southbound on Stone Avenue.[1] The reason for the stop was "travelling extremely close" to a silver pickup truck. Agent Madrigal wrote in his report that the Xterra had approximately "two (2) maybe three (3) feet of distance in separation from the rear bumper of the pick-up truck." The agent also based the stop on his believing "the two might have been travelling in tandem." The agent noted that travelling in tandem is "a tactic drug trafficking organizations (DTO) utilize in order to divert attention from a suspected vehicle loaded with contraband."

Mr. Ahmad stopped the vehicle and gave consent to search. Officers found 1.73 ounces of heroin and .07 grams of methamphetamine in the center console. Mr. Ahmad

---

[1] Agent Madrigal wrote in his report that the Border Patrol assigned him to the Pima County Sheriff's Department (PCSD) Border Interdiction Unit (BIU). While assigned to BIU, the agent wrote he is "granted Arizona Peace Officer status" as part of his duties.

1

said he met with a friend at a McDonald's parking lot where they ate and smoked marijuana.[2] During his interview Mr. Ahmad told Sheriff Deputies they could "check his phone" to show he did not know of the drugs in the car.[3]

Officers found Mr. Ahmad's cell phone on the passenger seat of the car. A Pima County Sheriff's Deputy seized the phone to investigate drug crimes based on the drugs. The search warrant the deputy sheriff applied for requested permission for a full search of the phone for this purpose. The warrant says nothing about investigating explosive device crimes, bombs, of anything relating to charges three and four of the indictment (Doc. 20). A judge signed the search warrant, finding probable cause. Presumably, the Pima County Sheriff deputies conducted the search of the phone and obtained the full phone data.

The federal government arrested Mr. Ahmad October 26, 2018; one month after the Arizona Department of Corrections released him on September 28 of the same year. During this case, the Pima County Sheriff gave or shared the phone data with federal agents, but this is unclear from government disclosure. Maybe federal agents obtained the phone data when the Pima County Sheriff obtained it.

The federal government seeks to use evidence obtained from Mr. Ahmad's phone, a direct product of this search warrant, against Mr. Ahmad at his trial. This evidence includes bomb recipes referenced in count three of the indictment. Although Mr. Ahmad said, "you can check my phone," it was to investigate heroin found in the car on June 27, 2017, but no other crimes. Mr. Ahmad based this consent on the drug evidence found and nothing else.

**II. Argument**

Federal agents failed to obtain a search warrant to search Mr. Ahmad's phone for evidence of bomb-related activity nor any drug evidence relating to counts one and two. As no warrant exceptions apply, the court must suppress all evidence seized from the phone as fruits of the poisonous tree. *Mapp v. Ohio*, 367 U.S. 643 (1949) (evidence obtained in

---

[2] Ahmad has a legal Arizona marijuana card for pain management from surgery.
[3] This is not the same as asking for formal, written consent to search the cell phone. No officer asked Mr. Ahmad for consent to search his phone.

2

violation of the Fourth Amendment to the U.S. Constitution, which prohibits "unreasonable searches and seizures," is inadmissible in federal and state courts).

**III.   Law and analysis**

   *A. The Fourth Amendment to the United States Constitution*

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

A police search without a warrant is per se unreasonable, unless the government can prove that one of the six narrowly crafted exceptions to the warrant requirement is applicable.[4] *Katz v. United States*, 389 U.S. 347, 357 (1967). None of the exceptions applies here.

   *B. Cell phone searches are protected by the Fourth Amendment*

In *Riley v. California*, the Supreme Court of the United States held that police must obtain a search warrant before searching a cell phone incident to arrest. 134 S. Ct. 2473, 2493 (2014). In doing so, the Court emphasized the computer-like nature of modern cell phones, including their "immense storage capacity," and the fact cell phones contain "a digital record of nearly every aspect of [our] lives--from the mundane to the intimate. *See.*

---

[4] The six exceptions to the warrant requirement are the following: (1) the automobile exception. *See Carroll v. United States*, 267 U.S. 132 (1925) (police may search a moving automobile when there is probable cause to believe the vehicle contains contraband); (2) search incident to a lawful arrest. *See United States v. Robinson*, 414 U.S. 218 (1973) (police may fully search a person incident to a full custody arrest); (3) stop and frisk. *See Terry v. Ohio*, 392 U.S. 1 (1968) (a police officer who identifies himself may conduct a protective search of the outer clothing when it reasonably appears that the suspect is armed and presently dangerous). (4) Consent. *See Schneckloth v. Bustamonte*, 412 U.S. 218 (1973) (when a person voluntarily consents, the police may search without a warrant and without probable cause). (5) Plain view. *See id*. At 222. (The plain view doctrine applies exclusively to warrantless seizures. Items that a person knowingly exposes to the public are not protected by the Fourth Amendment (*citing Katz v. United States*, 389 U.S. 347, 351 (1961)). (6) Emergency. *See Warden v. Hayden*, 387 U.S. 294 (1967) (police in hot pursuit of a suspect may enter the premises without a warrant)).

*Id.* at 2490. The *Riley* decision substantially echoes the Ninth Circuit's observation that "[l]aptop computers, iPads, and the like are simultaneously offices and personal diaries. They contain the most intimate details of our lives: financial records, confidential business documents, medical records, and private e-mails. This type of material implicates the Fourth Amendment's specific guarantee of the people's right to be secure in their 'papers.'" *United States v. Cotterman*, 709 F.3d 952, 964 (9th Cir. 2013) (en banc).

The Fourth Amendment requires that search warrants describe the place for government officials to search and the items for them to seize. *Kentucky v. King*, 563 U.S. 452, 459 (2011). The particularity requirement serves two purposes. First, it is supposed to "make general searches… impossible and prevent the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron v. United States*, 275 U.S. 192, 196 (1927).

Second, a particular warrant also assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *Groh v. Ramirez*, 540 U.S. 551, 561 (2004) (internal quotation marks omitted). "A warrant that fails to confirm to the particularity requirement of the Fourth Amendment is unconstitutional." *Massachusetts v. Sheppard*, 468 U.S. 981, 988 n.5 (1984). A search under a warrant is "limited by the extent of the probable cause" on which the judicial officer based the warrant. *United States v. Lopez-Cruz*, 730 F.3d 803, 810 (9th Cir. 2013) *citing In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 857 (9th Cir.1991).

*C. The search by federal agents exceeded the warrant*

In *United States v. Carey*, 172 F.3d 1268 (10th Cir.1999) a government agent searched a computer for evidence of drug sales when he stumbled across child pornography images. Although the search warrant directed the agent to look only for evidence of narcotics activities, he opened computer files he believed would contain child pornography images. The Tenth Circuit held that the search violated the Fourth Amendment because the agent "abandoned" his search for drug evidence and started a new, warrantless search. *Id.* at 1273.

This took place in Mr. Ahmad's case. Although the Pima County Sheriff had authority to search the phone for evidence of drug possession or drug sales, as the warrant specified, there was no request for investigations about bomb recipes or anything other than searches relating to drugs. The Pima County Sheriff, to defense counsel's knowledge, did not find evidence of other crimes during their search for drug evidence. At some point unknown to defense counsel, federal agents obtained Mr. Ahmad's phone and the phone data. They searched the phone and disclosed a bomb recipe allegedly sent by Mr. Ahmad. It is unknown to defense counsel if federal agents obtained the recipes from an informant's phone besides searching Mr. Ahmad's phone.

Here, the government disclosed recipes in Arabic presumably found on Mr. Ahmad's phone. It is unclear from government disclosure whether Mr. Ahmad sent these recipes to an undercover agent or confidential source, of if he merely showed them to an undercover agent or source. The government alleged in its Response to Defendant's Motion to Sever (Doc. 86) that "The defendant then showed the CHS some explosive materials/instructions on his cell phone." The motion to sever also stated that he "showed them how to build a book bomb on his cell phone" and "showed the homemade bomb instructions to others on his cell phone."

Federal agents conducted an independent search of the phone without a search warrant. The search relied on the probable cause for evidence of drug crimes. When Pima County Sheriff deputies applied for this search warrant, federal agents had investigated Mr. Ahmad for bomb-related activities. A search authorized by a valid warrant may be unreasonable if the officers conducting the search exceed the scope of the warrant, and, for example, looked for files unrelated to the subject of the search warrant. *See United States v. Hill*, 459 F.3d 966, 978 (9th Cir. 2006). This took place here. The court should suppress the bomb recipes as fruits of the poisonous tree, or the unlawful search by federal agents.

*D. The doctrine of inevitable discovery does not legalize the search of the phone by federal agents*

The inevitable discovery exception does not apply when officers have probable cause to apply for a warrant but simply fail to do so. *United States v. Lundin*, 817 F.3d

5

1151, 1161 (9th Cir. 2016) *citing United States v. Mejia*, 69 F.3d 309, 320 (9th Cir.1995); *United States v. Echegoyen*, 799 F.2d 1271, 1280 n. 7 (9th Cir.1986). The rationale for this principle is that "allowing the government to claim admissibility under the inevitable discovery doctrine when officers have probable cause to obtain a warrant but fail to do so would encourage officers never to bother to obtain a warrant. *Lundin* at 1162.

Here, the federal agents had probable cause to obtain a search warrant before examining the contents of Mr. Ahmad's phone. They did not do so. Thus, any search was unlawful and the court must suppress its fruits.

**IV.  Conclusion**

The court should suppress all phone evidence as fruits of the poisonous tree. Not doing so violates Mr. Ahmad's rights under the United States Constitution. U.S. Const. amends. VI.

RESPECTFULLY SUBMITTED this 2nd day of June, 2020.

                JON M. SANDS
                Federal Public Defender

                */s/ Walter I. Gonçalves, Jr.*
                WALTER I. GONÇALVES, JR.
                Assistant Federal Public Defender

Copy delivered electronically this date to:

Erica Seger
Assistant United States Attorney